## MAYERS v. ASSOCIATED INDEMNITY CORPORATION.

### No. 9004.

Circuit Court of Appeals, Fifth Circuit.

Dec. 7, 1939.

Rehearing Denied Jan. 15, 1940.

E. W. Napier, of Wichita Falls, Tex., for appellant.

T. R. Boone and Kearby Peery, both of Wichita Falls, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Fred C. Mayers had a knee injury in the course of his employment, but did not file claim for compensation with the Industrial Accident Board until about thirteen months afterwards, and on a suit to set aside the Board's unfavorable award lost his case by a directed verdict on the ground that he showed no good cause for not filing claim within the six months limited by the Texas Workmen's Compensation Law.

The good cause alleged and now relied on for not filing claim in six months from the injury is that "he suffered no disability as a result of said injury until about the time his claim was filed and prior to that time he believed his injury to be trivial and did not know or expect that it would result in any disability." The most favorable evidence is that of Mayers himself, and we look to that only. He says he was general plant superintendent, and while supervising the loading of some equipment his knee was struck by a heavy chain, causing severe, sharp pain. After a day or two the knee swelled and got worse and after five or six days he was sent by the employer to a clinic where the knee was taped, the doctor saying it might have to be drained. It swelled worse and the next day the leg was encased in a plaster cast and Mayers was put on crutches, and he went on them for two weeks. He continued his supervisory work, having lost about a day and a half. After eight months he worked for several other employers, and finally became a W. P. A. superintendent, having lost altogether three or four months' time on account of his leg. When asked why he did not file his claim earlier than thirteen months after the injury he said: "I really didn't believe that it was as severe as it turned out to be. * * * During the [first] few months it continued to bother me, but not seriously enough to make me feel I was going to have to quit work; and then being through Wichita Falls I called the doctor here to examine me after it became so severe. I was losing some time, and he advised me that it would not become any better. The day following I filed my claim." He stated that during the whole time he knew his knee hurt and gave trouble, and swelled if he bent it. Hot applications were used to reduce the swelling. He thought, however, it would get well.

Appellant argues that compensation is not given for pain but only for disability to work, so that Mayers, having lost no time really had no claim till he learned his injury would be permanent. The statute, Rev.Stats. Art. 8307, § 4a, does not fix upon the date of the loss of time, or permanence or seriousness of the injury, as marking the duty to file claim. It requires that the "claim for compensation with respect to such injury shall have been made within six months after the occurrence of same." It is well settled that the six months dates from the infliction of the injury, and not from the time it becomes serious or permanent or causes disability to work. The purpose of the limitation is to have prompt adjustment of claims, investigation of the injury while the occurrence is fresh, and an opportunity to the employer to take timely measures to prevent the injury becoming more serious. If an injury occurs the injured party ought to give notice and make claim as required by the statute if he desires to have compensation in case the injury should prove serious. Ordinarily, belief that the injury will get well does not excuse timely claim; though there may arise cases where the injury appears so trifling and the result is so unexpectedly serious, that the case may present "good cause" for not filing. This is not such a case. Mayers knew he had received a heavy blow on the knee, and the pain and swelling were such as to send him to the hospital, cause his leg to be put in plaster, and himself to go on crutches for two weeks. Ever after he could not bend his knee with weight on it except with pain and resulting swelling. The injury was not apparently trivial. If he had had a different kind of work he would have been dis-

abled from the beginning. He severed his connection with his employer and went into other employments, and seven months too late made his claim. We do not think it could be lawfully concluded that he had good cause to delay. General Acc. Fire & Life Assur. Corp. v. Martin, Tex.Civ.App., 110 S.W.2d 258; Cunningham v. Fidelity & Casualty Co., Tex.Civ.App., 102 S.W.2d 1106; Johnson v. Assur. Corp., 131 Tex. 357, 112 S.W.2d 449; Rice v. Maryland Casualty Co., 5 Cir., 88 F.2d 923; Garrity v. Home Indemnity Co., 5 Cir., 84 F.2d 484.

Judgment affirmed.