**O. J. FORTENBERRY, Appellant,**

v.

**MARYLAND CASUALTY COMPANY,**
**Appellee.**

**No. 16490.**

United States Court of Appeals
Fifth Circuit.

Aug. 13, 1957.

---

1.  28 U.S.C.A. § 1732 is based on said § 695.

Peery & Wilson and Tom D. Glazner, Wichita Falls, Tex. (Kearby Peery, Wichita Falls, Tex., on appeal only), for appellant.

R. Larry Robinson, Wichita Falls, Tex., Jones, Parish & Fillmore, Wichita Falls, Tex., on the brief, for appellee.

Before RIVES and CAMERON, Circuit Judges, and DAWKINS, Sr., District Judge.

RIVES, Circuit Judge.

This is a workmen's compensation case in which the district court entered judgment notwithstanding the verdict on the ground that appellant had failed to raise a fact issue as to "good cause" for not filing his claim with the Industrial Accident Board within the six months required by Section 4a of Art. 8307, Vernon's Revised Civil Statutes of Texas.[1]

The appellant sustained an accidental injury to his back while in the course of his employment with Hughes Development Company on August 3, 1955. Notice of such injury was received by the employer that same day. Appellant filed his claim for compensation on April 7, 1956. He alleged that he had good cause for filing his claim two months after the time prescribed by law in that he believed until about the time the claim was filed that he would recover from his injury to the extent that he would have no disabling results therefrom; that he did not wish to annoy his employer or the insur--

---

[1] "Sec. 4a. Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury or the first distinct manifestation of an occupational disease, and unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of the injury or of the first distinct manifestation of an occupational disease; or, in case of death of the employee or in the event of his physical or mental incapacity, within six (6) months after death or the removal of such physical or mental incapacity. For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board. Acts 1917, p. 269; Acts 1947, 50th Leg., p. 180, ch. 113, § 10."

ance company unless and until he was reasonably sure that he was going to have some substantial disability; and that his employer continued to furnish him with suitable employment.

Upon trial to a jury on October 12, 1956, a verdict was returned that appellant sustained partial and permanent 35 per cent incapacity as a result of his injury, and that he had good cause for not filing his claim within the six months statutory period.

Appellee filed its motion for judgment non obstante veredicto, contending that the pleadings did not allege legal elements or grounds of good cause under the Workmen's Compensation Act, and that the evidence conclusively defeated any "good cause." The district court sustained that motion, and entered judgment for the appellee, notwithstanding the verdict. This appeal followed.

Appellant was injured about 10:30 in the morning when he picked up a one hundred pound keg of nails and put it on his shoulder. He had a pain through his back and down his legs, and had to have a fellow employee take the keg off his shoulder. "I couldn't get shed of them, I was hurting so bad that I couldn't lift them off." " * * * a pain hit me in my back, just seemed like it just paralyzed me nearly." He thought the pain would pass and stayed at the job site until 2:30 that afternoon, when his foreman sent him to Dr. Leadbetter. Dr. Leadbetter sent him to a hospital where he remained in traction, "weights tied on my legs and pulled over the end of the bed," for seven days. He continued going to Dr. Leadbetter for another week receiving heat treatments, but "I wasn't getting any better, still I couldn't straighten up and I couldn't walk." He then went to a chiropractor of his own choice. " * * * he helped me to where I could go back out on light duty." He was off the job about seven weeks altogether. Since then he has been able to do only light work.

"The biggest thing I lift now is maybe one end of a two-by-twelve board or a sawhorse. And when there is heavy things that comes up that we have to do, my foreman and the other men has done the lifting and took the load off me since I have been hurt."

He thought that he got as well as he is now in December and had made no appreciable improvement since then. He went to see the chiropractor about August 13, and didn't go back to Dr. Leadbetter after that.

As to his delay in filing claim, he testified:

"Q. You failed to file your claim within the time prescribed by law. Under the law, of course, you know that you have to file it within six months—that is, you know it now; didn't know it before. But you didn't know that until some, probably a couple of months later.

"Now you were hurt the 5th of August (sic). That would be August, September, October, November, December. Then there would have been January, February, March and up until the 5th of April that you did employ a lawyer and signed the claim.

"Now tell the Court and jury why you didn't file your claim earlier and within the time prescribed by law?

"A. Well, I thought that I was getting along all right. I thought probably that there was something that I could overcome and be all right without any lasting injury or hurting me all the time. And so I went on with it as long as I did because I kept thinking I would be all right. And I didn't want to file no claim, I didn't want to have any trouble with the insurance about it. I wanted to just go ahead. If my back was all right, that was all right with me; that's what I wanted. And up until that time I went to Judge Napier, I thought I was going to be all right. I just made up my mind I wasn't, that I kept hurting and I got to where I had to lose some time, so I went to see about filing my claim.

"Q. Now about the time you came to see me, is that when you came to the conclusion that you weren't probably going to be all right? A. Yes, sir.

"Q. And you thought it was serious and thought you better do something about it? A. Yes, sir.

"Q. Well, I might ask you this: Did also the fact that they furnished you suitable employment, did that enter into your decision any? A. Yes, sir."

Further on, he testified:

"Q. Now did the doctor they sent you to, Dr. Leadbetter, did he tell you you would be all right pretty soon? A. Yes, sir.

"Q. And did you take that into consideration in delaying in the filing of your claim? A. Yes, sir."

He received four or five weekly compensation checks from the appellee before he went back to work on September 12. Two or three days later, he was handed a final check for about $14.00 from appellee, along with a release which he refused to sign, "Because I wasn't well. I wasn't able to do the work that I had been a-doing and I wanted to wait and see how I got along." His back, legs and nervous condition are still bothering him, and he is still taking treatments from Dr. Stephens, the chiropractor.

■■ The "good cause" provision of the Texas statute has been a fruitful source of litigation.[2] In construing and applying that provision, we act simply as another state court. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The proceeding being statutory and unknown to the common law, the kind of jury trial to which the parties are entitled is not that preserved by the seventh amendment, but is controlled entirely by Texas state law. National Labor Relations Board v. Jones & Laughlin, 1937, 301 U.S. 1, 48, 57 S.Ct. 615, 81 L.Ed. 893; Erie R. Co. v. Tompkins, supra.

■ In determining what constitutes "good cause" within this statute, the Texas courts, in addition to establishing a general test of ordinary prudence,[3] have declared certain reasons insufficient as matter of law to show good cause. Among such insufficient reasons are the mere belief that the claimant will recover or get well,[4] and being continued in em-

---

2. Appellant relies on the following cases: Texas General Indemnity Co. v. Longlois, 5 Cir., 1953, 200 F.2d 780; Pacific Employers' Insurance Co. v. Oberlechner, 5 Cir., 1947, 161 F.2d 180; I.C.T. Insurance Co. v. Gunn, Tex.Civ.App.1956, 294 S.W.2d 435; Harkey v. Texas Employers' Ins. Ass'n, 1948, 146 Tex. 504, 208 S.W.2d 919; Hawkins v. Safety Casualty Co., 1948, 146 Tex. 381, 207 S.W. 2d 370; National Automobile & Casualty Ins. Co. v. Shawver, 5 Cir., 1955, 222 F. 2d 764; Fidelity & Casualty Co. of New York v. McKay, 5 Cir., 1934, 73 F.2d 828, 829; Maryland Casualty Co. v. Jackson, Tex.Civ.App.1940, 139 S.W.2d 631; Safety Casualty Co. v. Brown, 5 Cir., 1956, 229 F.2d 889, 891; Reid v. Maryland Casualty Co., 5 Cir., 1933, 63 F.2d 10, 11.

Appellee relies on the following among other cases: Indemnity Ins. Co. of North America v. Williams, 129 Tex. 51, 99 S.W.2d 905 (Commission of Appeals, opinion adopted by Texas Supreme Court 1937); Consolidated Casualty Insurance Co. v. Perkins, 1955, 154 Tex. 424, 279 S.W.2d 299; Texas Indemnity Ins. Co. v. Hayes, Tex.Civ.App.1937, 106 S.W.2d 760, 761; Driver v. Texas Employers' Ins. Ass'n, Tex.Civ.App.1953, 266 S.W.2d 401; Texas Employers' Ins. Ass'n v. Portley, 1953, 153 Tex. 62, 263 S.W.2d 247; Mayers v. Associated Indemnity Corp., 5 Cir., 1940, 108 F.2d 89; General Accident Fire & Life Assur. Corp. v. Martin, Tex.Civ.App.1937, 110 S.W. 2d 258, 260; Hawkins v. Safety Casualty Co., 1948, 146 Tex. 381, 207 S.W.2d 370; Copinjon v. Aetna Casualty & Surety Co., Tex.Civ.App.1951, 242 S.W. 2d 219; Sandage v. Traders & General Ins. Co., Tex.Civ.App.1940, 140 S.W.2d 871; Dodson v. Travelers Insurance Co., Tex.Civ.App.1955, 278 S.W.2d 242; Phariss v. Texas Employers Ins. Ass'n, Tex.Civ.App.1956, 290 S.W.2d 289.

3. Hawkins v. Safety Casualty Co., 1948, 146 Tex. 381, 207 S.W.2d 370.

4. Driver v. Texas Employers' Ins. Ass'n, Tex.Civ.App.1953, 266 S.W.2d 401; Texas Employers' Ins. Ass'n v. Portley, 1953, 153 Tex. 62, 263 S.W.2d 247; May-

ployment in a light duty capacity.[5] No case is cited or can be found holding it sufficient that the claimant did not want "to annoy his employer or the insurance company." The Texas courts have aptly pointed out that, if insufficient reasons are accepted, this statute will become a nullity. General Accident Fire & Life Assur. Corp. v. Martin, Tex.Civ.App., 110 S.W.2d 258, 260. Perhaps that wouldn't be bad, but the decision of that question is for the Texas Legislature. The Fifth Circuit at one time referred to the fact that "The accidents were well known at their happening, and no possible prejudice arose from the delay to file the claim." Fidelity & Casualty Co. of New York v. McKay, 5 Cir., 1934, 73 F.2d 828, 829. The Texas courts have later stated, however, that:

"It is well settled in this state that the timely filing of a claim for compensation with the Industrial Accident Board is jurisdictional unless, for good cause in meritorious cases, such filing has been waived under Article 8307, Section 4a, of the Revised Statutes, Vernon's Ann.Civ. St." Driver v. Texas Employers' Ins. Ass'n, Tex.Civ.App.1953, 266 S.W.2d 401, 402.

From this record, the conclusion is inescapable that the appellant suffered a serious injury from which he was absent from work seven weeks; that he has shown no appreciable improvement since December, 1955, within five months of his injury; that he has never been able to do the kind of work he did before his injury. He did not actually rely on Dr. Leadbetter's statement that "you would be all right pretty soon" made within the first two weeks after his injury. After leaving Dr. Leadbetter and taking some fifty chiropractic treatments, with his condition still uncured, no prudent man could rely on that statement. The truth

is obvious that appellant simply did not know, until he called on a lawyer just before filing, that he had to file his claim within six months. The other reasons are mere afterthoughts in a valiant effort to show good cause. Harsh as is the result, the Texas law leaves us no alternative but to agree with the learned district judge.

The judgment is therefore

Affirmed.

---

ers v. Associated Indemnity Corp., 5 Cir., 1940, 108 F.2d 89; General Accident Fire & Life Assur. Corp. v. Martin, Tex.Civ.App.1937, 110 S.W.2d 258, 260.

5. Indemnity Ins. Co. of North America v. Williams, 129 Tex. 51, 99 S.W.2d 905

(Comm'n of Appeals, opinion adopted by Texas Supreme Court 1937); Consolidated Casualty Insurance Co. v. Perkins, 1955, 154 Tex. 424, 279 S.W.2d 299; Texas Indemnity Ins. Co. v. Hayes, Tex. Civ.App.1937, 106 S.W.2d 760.